# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES POSTAL SERVICE,** | : | CIVIL ACTION NO. 1:07-CV-2101 |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **SUNSHINE DEVELOPMENT, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

This is a property dispute arising between the United States Postal Service ("USPS") and Sunshine Development, Incorporated ("Sunshine"). USPS contends that it appropriately exercised a purchase option provision contained in a lease governing a United States Post Office branch in Chambersburg, Pennsylvania and is thereby entitled to purchase fee simple title to the property. Sunshine rejects this contention, argues that the lease expired, and claims that USPS is a holdover tenant liable for fair market rents. Presently before the court is Sunshine's motion for partial summary judgment. (See Doc. 20.) For the reasons that follow, the motion will be granted.

**I.      Statement of Facts**[1]

On November 7, 1962, the United States Post Office Department[2] entered into a leasing agreement (the "Lease") with Sunshine for use of a building located at 308 Lincoln West Way, Chambersburg, Pennsylvania. (Doc. 22 ¶ 1; Doc. 26 ¶ 1.) The Lease grants USPS use of the premises as a postal facility for a base term of twenty years at an annual rate of $28,000 per year. (See Doc. 20, Ex. A.) The Lease contained one ten-year renewal option and four five-year renewal options. (See id.) At the conclusion of each term, including the base term, the ten-year renewal term, and all of the five-year renewal terms, the Lease provides USPS with an option to purchase fee simple title to the premises. (See id. ¶ 16.) Exercise of the purchase option provision requires that "the Government [] give the Lessor notice of election to purchase at least one year in advance" of the relevant term's expiration. (Id.)

USPS fulfilled the base term, exercised its ten-year renewal option, and thereafter opted to renew for three five-year periods. (Doc. 22 ¶ 5; Doc. 26 ¶ 5.) In the winter of 2006, however, USPS real estate specialist Dennis Perry ("Perry") approached USPS Eastern Facilities Service Office manager Tom Russell ("Russell") about exercising the purchase option instead of renewing for an additional five years. (See Doc. 25, Ex. B at 77.) At the time, Russell was a duly

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to USPS, who is the nonmoving party. See infra Part II.

[2] The United States Post Office Department was the predecessor to USPS.

2

appointed USPS contracting officer with binding authority on contracts in the gross amount of $5 million or less.³ (See Doc. 25, Ex. F.) Russell was receptive to Perry's purchase proposal, and he instructed Perry to "[p]ut all the paperwork together. Do the due diligence to get financial approval so we can . . . make this happen, [and] acquire the property." (Id.) Over the next several months, Perry arranged for completion of an appraisal of the leased property and a decision analysis report. (See Doc. 25, Ex E at 110; id., Ex. J; id., Ex. K.) Once the required reports were produced, they were reviewed by multiple USPS executives. (See Doc. 25, Ex. K.) On August 16, 2006, Russell received written authorization to purchase the property from Alexander Lazaroff, vice president of the Eastern Area Office. (See Doc. 25, Ex. P.) Russell thereafter told Perry, "It's approved. Send out the notice [to purchase]." (Doc. 25, Ex. B at 77.)

On September 27, 2006, Perry sent written correspondence to Sunshine president Nickson Oyer ("Oyer") which stated, *inter alia*, "This letter is to notify you that the US Postal Service . . . will be exercising its purchase rights to the subject property located at 308 Lincoln Way East, Chambersburg, PA 17201." (Doc. 20, Ex. B.) The parties do not dispute that when Perry delivered this document, he

---

³ Russell was endowed with contracting authority via written delegation on September 11, 1996. (See Doc. 31, Ex. N.) The delegation letter explicitly provides Russell with site acquisition authority up to $5 million, but limits his ability to re-delegate this authority, stating, "The authority . . . may not be re-delegated, in whole or in part, and is subject to limitations and conditions set forth in the Procurement Manual and all other instructions and regulations related to Facilities contracting." (Id.)

3

possessed only "Level I" contracting authority, as defined by USPS regulations.[4] (See Doc. 22 ¶ 9; Doc. 26 ¶ 9.) Level I Postal Service lack authority to contractually bind the government in real estate transactions absent a specific delegation of authority by an appropriate superior officer. (See Doc. 20, Ex. D.) In fact, Perry testified that this was the first purchase option he had ever signed, and stated that the exercise of purchase option provisions is not part of his regular employment duties. (See Doc. 31 at 53-55.) Furthermore, according to Esther Tinort ("Tinort"), manager of the Real Estate Branch at USPS's Facilities Service Office in Greensboro, North Carolina, purchase options are typically signed by USPS employees with actual contracting authority to do so. (See Doc. 20, Ex. M at 28-29.) Tinort explained that a USPS employee lacking the required authority to bind the

---

[4] According to the Postal Service's "Realty Acquisition and Management" Real Estate Handbook, "Level I" contracting agents possess no site acquisition authority, up to $25,000 per year in leasing authority, and up to $25,000 in real estate support per transaction. (See Doc. 20, Ex. D.)

government to a purchase option should simply not attempt to execute the option.[5] (See id.)

Other than Perry's September 27 letter, no USPS official contacted Sunshine prior to October 14, 2006—the final day on which USPS could exercise the purchase option. (See Doc. 22 ¶ 6; Doc. 26 ¶ 6.) On May 27, 2007, counsel for Sunshine sent Perry return correspondence that read as follows: "[I]n your letter of September 27, 2006, you state that the US Postal Service 'will be exercising its purchase rights to the subject property . . .' My client has received no such notice from a duly authorized Contracting Officer; therefore, he expects the lease to continue in full force and effect."[6] (Doc. 20, Ex. F.) Sunshine delivered another letter on October 5, 2007, wherein it objected to USPS's "holdover tenancy for any specific or additional term and at the current rental rate." (Doc. 22 ¶ 12; Doc. 26 ¶ 12.) Two days later,

---

[5] At her deposition, Tinort testified as follows:

Q: And when you signed [purchase options], did you make sure you had the requisite contracting authority to do that?
A: Yes.
Q: And if you didn't have that authority, would you make sure that someone else that had the authority [to] execute[] the document?
A: Yes.
Q: And that's the document that actually binds the Postal Service to the renewal?
A: Yes, I think so.

(Doc. 20, Ex. M at 29.)

[6] The Lease permitted USPS to renew the rental agreement up to sixty days prior to conclusion of the lease term. (Doc. 20, Ex. A ¶ 5.) Therefore, USPS had until approximately August 14, 2007 to renew.

5

USPS sent Sunshine a check for purchase of the property in the amount of $90,000.[7] Sunshine promptly returned the proffered payment. (Doc. 25, Ex. L.) The Lease expired on October 14, 2007. (Doc. 22 ¶ 6; Doc. 26 ¶ 6.) USPS continues to occupy and use the building, however, and has not paid rent since the date on which the Lease expired. (Doc. 22 ¶¶ 14, 17; Doc. 26 ¶¶ 14, 17.)

The instant suit was commenced when USPS filed a complaint for specific performance on November 16, 2007. (Doc. 1.) In particular, USPS seeks an order directing Sunshine to sell the Chambersburg property on the terms specified in the Lease purchase option. (Id. at 8 ¶¶ 1-2.) On August 8, 2008, Sunshine counterclaimed, requesting: (1) a declaratory judgment that USPS failed to exercise the purchase option, and that the Lease expired, (2) fair market rents during the period of USPS's alleged holdover tenancy, and (3) damages as a result of an unconstitutional taking. (Doc. 15.) Sunshine then filed the instant motion for partial summary judgment, which requests that the court reject USPS's specific performance claim, declare the government's notice of election legally ineffective and the Lease expired, and find that USPS has taken its property without just compensation and is liable for fair market rents. (Doc. 20.) These issues have been fully briefed by the parties, and they are now ripe for disposition.

---

[7] This amount is the purchase price specified by the Lease. (Doc. 20, Ex. A ¶ 16.)

## II. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmovant on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. Discussion

The parties' central disagreement concerns the legal validity of Perry's September 27, 2006 letter as a binding notice of USPS's election to purchase the property. USPS argues that the letter fulfilled its obligation under the purchase option provision "that the Government shall give the Lessor notice of election to purchase at least one year in advance" of expiration of the current Lease term. Sunshine contends that because Perry was without contracting authority, his attempt to exercise the purchase option was a legal nullity. Accordingly, Sunshine

7

claims that USPS allowed the Lease to expire and is therefore liable for fair market rents as a holdover tenant.

The parties proceed under § 409(a) of the Postal Reorganization Act, which grants federal district courts "original but not exclusive jurisdiction over all actions brought by or against the Postal Service." 39 U.S.C. § 409(a); see also Licata v. United States Postal Serv., 33 F.3d 259, 261 (3d Cir. 1994) (holding that § 409(a) grants subject matter jurisdiction to district courts when the Postal Service is a party to the suit). Interpretation of the Lease is guided by federal law.[8] See Prudential Ins. Co. of Am. v. United States, 801 F.2d 1295, 1298 (Fed. Cir. 1986) (explaining that it is "well settled that contracts to which the government is a party . . . are normally governed by federal law, not by the law of the state where they are made or performed"); see also Ginsberg v. Austin, 968 F.2d 1198 (Fed. Cir. 1992) (holding that when "federal law does not answer the issue, we look to general property and contract law principles as they are embodied in state law pronouncements"). In order to resolve the present dispute, the court must discern whether Perry's letter was a valid exercise of the Lease purchase option. Thus, the

---

[8] Although USPS states that it "does not agree that this Court must look exclusively at federal law when deciding this matter," it concedes that "both federal and state contract interpretation principles are virtually identical." (Doc. 25 at 7 n.1.) Furthermore, when USPS is party to a lease, the contractual rights of the parties are normally dictated by federal law. See, e.g., Forman v. United States, 767 F.2d 875, 879-80 (Fed. Cir. 1985) (applying federal law to postal lease entered between Post Office Department and private lessor).

court will begin its inquiry by analyzing the language of the purchase option provision and Perry's attempt to trigger the same.

### A. **Exercise of the Lease Purchase Option**

Interpreting the terms of a government contract requires a reviewing court to apply general rules of contract interpretation. Scott Timber Co. v. United States, 333 F.3d 1358, 1366 (Fed. Cir. 2003). When the terms of the contract are clear, they must be given their plain and ordinary meaning. Coast Fed. Bank v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003); see also In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir. 1996) (explaining that the "strongest external sign of agreement between contracting parties is the words they use in their written contract"). Only where a contract contains ambiguity may the court attempt to decipher the intention of the parties in forming the agreement. See United States v. New Jersey, 194 F.3d 426, 433-34 (3d Cir. 1999); see also Scott Timber, 333 F.3d at 1366-68. The Lease purchase option in the matter *sub judice* states that "the Government shall give the Lessor notice of election to purchase at least one year in advance" of termination of the current rental term. (Doc. 20, Ex. A ¶ 16.) Both parties agree that this provision is not ambiguous, and requires a government representative to supply Sunshine with notice at least one year prior to purchase. (See Doc. 22 ¶ 3; Doc. 25 at 8-9; Doc. 26 ¶ 3; Doc. 31 at 1-2.) It is the identity of the government representative, however, that is the real point of discord.

Formation of a contract with the government requires mutuality of intent, definite offer, unconditional acceptance, and consideration. City of Cincinnati v.

9

United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998). In addition, the government's representative must possess "actual authority" in order to bind the government to the contract's obligations. Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003); City of Cincinnati, 153 F.3d at 1377. When, as here, the subject matter of the dispute is an option to purchase provision, exercise of the option simply requires the optionee to tender acceptance according to the option's terms. See Freightliner Corp. v. Caldera, 225 F.3d 1361, 1366 (Fed. Cir. 2000); New Eng. Tank Indus., Inc. v. United States, 861 F.2d 685, 687 (Fed. Cir. 1988); RESTATEMENT (SECOND) OF CONTRACTS § 63 cmt. f. There is no doubt that notice was tendered by USPS, and if this were a contract between two private parties, Sunshine would likely be forced to sell. But this was not a bargain between two private parties. Because the government was a party to the contract, exercise of the option required involvement by a USPS employee with actual authority to purchase real estate. See Hanlin, 316 F.3d at 1328.

The actual authority requirement is an additional prerequisite for effective formation of government contracts. As the Supreme Court held long ago, "[t]he scope of [an agent's] authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though . . . the agent himself may have been unaware of the limitations upon his authority. Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 383-84 (1947). In the case of USPS, the authority of its employees is carefully bounded by legislation. Section 601.104 of Title 39 of the Code of Federal Regulations states

that only "contracting officers with written statements of specific authority[] and others designated in writing . . . have the authority to bind the Postal Service with respect to entering into, modifying, or terminating any contract regarding the acquisition of property." Section 222.3(a) of the same title requires that "[a]ll delegations of authority must be officially documented." 39 C.F.R. § 222.3(a). Finally, an agent with authority may not delegate his or her authority to others if expressly prohibited by the terms of the agent's delegation. Id. § 223.3(e). These provisions are public, they inject transparency into the government contracting process, and parties are entitled to rely upon them when bargaining with the government. See New Eng. Tank, 861 F.2d at 693-95 (explaining that public regulations are binding on the government).

As a Level I contracting agent, Perry lacked authority to bind the government to purchase real property. (See Doc. 20, Ex. D; Doc. 22 ¶ 9; Doc. 26 ¶ 9.) USPS does not dispute this fact, but claims that Perry was delegated requisite authority when Russell orally ordered him to "acquire the property" in 2006. (Doc. 25 at 14.) The undisputed evidence does not support such an account. Rather, the record indicates that Russell was not permitted to re-delegate his contracting authority. The express terms of his written delegation letter flatly state that Russell's authority "may not be re-delegated, in whole or in part." (Doc. 31, Ex. N.) Furthermore, even if Russell were permitted to delegate authority to Perry, the Code of Federal Regulations requires that "[a]ll delegations of authority must be officially documented," § 222.3(a); USPS does not even attempt to argue that

11

Russell's verbal instruction to purchase the property constitutes an officially documented delegation under § 222.3(a), and the court holds that it does not, see Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998) (stating that "agency procedures must be followed before a binding contract can be formed"); Am. Gen. Leasing, Inc. v. United States, 587 F.2d 54, 58 (Ct. Cl. 1978) (holding that federal regulations which impact agency relationships must be adhered to in order to form valid government contract). As a matter of law, Perry lacked authority to exercise the purchase option, rendering ineffectual his attempt to do so on September 27, 2006.

The court is not unsympathetic to USPS's position: after all, its employee identified a beneficial provision in the Lease, a cost-benefit purchase analysis was performed, and Russell obtained written contracting authority from his superior, Alexander Lazaroff. All of these steps were taken in accordance with USPS operating procedure and legislative requirements. Had Russell sent notice of election, Sunshine would likely be bound to sell at the bargained-for price. Russell did not send the notice, however, nor did he follow up with any subsequent correspondence affirming the government's intent to purchase. Thus, Sunshine was not only reasonable in demanding notice from an agent with actual contracting authority, but was acting pursuant to its duty under the law. It is well settled that private parties contracting with the government bear an affirmative responsibility to ascertain the scope of authority possessed by government officials with whom they transact business. See Fed. Crop Ins., 332 U.S. at 384; Ames v. United States

Postal Serv., No. Civ. 05-4429, 2005 WL 3536202, at *4 (D.N.J. Dec. 21, 2005); Route 26 Land Dev. Ass'n v. United States, 753 F. Supp. 532, 542 (D. Del. 1990). Sunshine attempted to comply with its legal duty by requesting that USPS act through an authorized agent; the law does not—and should not—penalize such conduct after the fact.

The government argues that even if Perry's attempt to exercise the option was invalid, the purchase option was later ratified by duly authorized government officials. "Agreements made by government agents without authority to bind the government may be subsequently ratified by those with authority if the ratifying officials have actual or constructive knowledge of the unauthorized acts." Harbert/Lummus, 142 F.3d at 1433 (citing United States v. Beebe, 180 U.S. 343, 354 (1901)). According to USPS, Perry's attempt to exercise the purchase option was ratified when USPS delivered a check for the purchase price in October 2007—one year after the option had lapsed. (See Doc. 25 at 18.) This argument is unavailing. By October 2007, the purchase option had lapsed, making it impossible for USPS to accept the terms set forth by the option. See New Eng. Tank, 861 F.2d at 687 (requiring acceptance of the offer to be in exact accord with the contract terms); see also 3-11 CORBIN ON CONTRACTS § 11.17. Once lapsed, the benefits of the purchase could not be revived by means of a financial transfer on the eve of the Lease's expiration. Furthermore, a binding ratification must find root in a demonstrated acceptance rather than silence or tacit approval. See Harbert/Lummus, 142 F.3d at 1434; EWG Assocs., Ltd. v. United States, 231 Ct. Cl. 1028, 1030 (Ct. Cl. 1982). USPS

13

proffers no evidence that Russell, or any other employee with contracting authority, made an overt attempt to exercise the purchase option after delivery of Perry's September 27 letter, or to convey to Sunshine that the government was ratifying Perry's unauthorized action. Consequently, the government cannot now contend that it ratified Perry's ineffectual exercise of authority merely by sending a payment a few days prior to term's end.

In sum, the undisputed record evidence shows that USPS's attempt to exercise the Lease purchase option was legally inadequate. The court will therefore issue a declaratory judgment that the option lapsed, and that the Lease thereafter expired. As a result, USPS's continued tenancy is unlawful, a subject to which the court now turns.

### B. Liability for Continued Tenancy

Where a leasehold contains no explicit term to the contrary, the general rule is that "an implied duty to vacate is an inherent part of every fixed term lease agreement." Prudential Ins. Co., 801 F.2d at 1299; see also Allenfield Assocs. v. United States, 40 Fed. Cl. 471, 486 (Ct. Fed. Cl. 1998). In light of the court's ruling above, USPS had a duty to vacate the property or renegotiate the Lease when the Lease term expired on October 14, 2007; it did neither. Approximately ten days prior to expiration of the Lease, Sunshine objected to USPS's continued occupancy as a holdover tenant and demanded reasonable rent. (See Doc. 22 ¶ 12; Doc. 26 ¶ 12.) USPS ignored this demand and thereby breached its contract with Sunshine. See Allenfield, 40 Fed. Cl. at 487. The monetary obligation of a holdover tenant is

14

the reasonable rental value of the property occupied.  See id. at 486-87 (citing cases).  Sunshine's motion for summary judgment does not request a damages determination, but seeks only a finding of liability.  (See Doc. 20.)  The court finds USPS liable for fair market rents in an amount to be measured by the finder of fact.

As an alternative to breach of contract damages, a federal government lessee that holds over after expiration of a lease term is subject to liability for taking private property without just compensation in contravention of the Fifth Amendment.  See Prudential Ins. Co., 801 F.2d at 1300 n.13; Allenfield, 40 Fed. Cl. at 487; see also U.S. CONST. amend. V.  Temporary takings, like those which are permanent in nature, are compensable and, for the purposes of liability, there is no distinction between the two varieties.  See First Lutheran Church v. Los Angeles County, 482 U.S. 304, 318-19 (1987); Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1117 n.8 (E.D. Pa. 1993).  When a government lessee physically occupies and uses a property after the expiration of its lease, a taking has occurred. Allenfield, 40 Fed. Cl. at 488.  In the matter *sub judice*, Sunshine has proven USPS's liability for temporarily taking its property.  Summary judgment on the question of liability is thus appropriate, and the question of just compensation shall be reserved for trial.

## IV.    **Conclusion**

For the foregoing reasons, the court declares that the attempt to exercise the Lease purchase option was ineffectual, rendering the continued use of the Chambersburg property by unlawful absent remittance of just compensation.

15

USPS's claim for specific performance is rejected as a matter of law, and a trial shall be held in order to determine the proper amount of damages due Sunshine.

An appropriate order follows.

                                                    S/ Christopher C. Conner
                                                  CHRISTOPHER C. CONNER
                                                  United States District Judge

Dated:        December 9, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES POSTAL SERVICE,** | : | CIVIL ACTION NO. 1:07-CV-2101 |
| | : | |
| | : | (Judge Conner) |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **SUNSHINE DEVELOPMENT, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## **ORDER**

AND NOW, this 9th day of December, upon consideration of defendant's motion (Doc. 20) for partial summary judgment, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 20) for partial summary judgment is GRANTED. See FED. R. CIV. P. 56(c).

2. The Clerk of Court is directed to defer the entry of judgment on this claim in favor of defendant and against plaintiff until the resolution of all claims.

3. A revised pretrial and trial schedule shall issue by future order of court.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge